## CITY OF PITTSBURGH v. SOUTH SIDE TRUST CO. et al.

(Circuit Court of Appeals, Third Circuit. November 26, 1913.)

### No. 1,777.

BANKRUPTCY (§ 314*)—CLAIMS—TAXES—PAYMENT.

Mortgaged realty belonging to the bankrupt being about to be sold on foreclosure, the mortgagee's attorney, in order to prevent the tax collector from bidding at the sale an amount that would cover the taxes, as was usual in such cases, was required to deposit the mortgagee's certified check in an amount sufficient to cover all taxes, whereupon the property was sold to the mortgagee for the costs. Thereafter the city filed a claim in the bankruptcy proceedings for the taxes, but the collector refused to testify that he held the check merely as indemnity, and testified that it was given in payment of the taxes. *Held* that, the check having been given and received in payment of the taxes, the city was not entitled to prove its claim therefor against the bankrupt's personal assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of bankruptcy proceedings of the B. White Company, a corporation. A petition was filed in the name of the City of Pittsburgh for an order on the South Side Trust Company, trustee of the bankrupt, for an order compelling the trustee to pay city taxes assessed against certain real estate sold on foreclosure of a mortgage and purchased by the mortgagee. From an order denying such relief, on the ground that the taxes had been paid, the City appeals. Affirmed.

Charles A. O'Brien, City Sol., of Pittsburgh, Pa., and C. Elmer Brown, Asst. City Sol., of Altoona, Pa. (Charles A. Woods, of Pittsburgh, Pa., of counsel), for appellant.

J. Bruce Orr, of Pittsburgh, Pa., for appellee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the judgment of the District Court of the United States for the Western District of Pennsylvania, on a petition of the City of Pittsburgh, the appellant, affirming the report and opinion of the referee in bankruptcy, who disallowed to the appellant a claim for taxes in the sum of $3,078, assessed by the city of Pittsburgh for the year 1912 against the real estate of B. White Company, bankrupt.

The following facts are disclosed by the record:

B. White was the owner of certain real estate in the city of Pittsburgh. Prior to 1912 and to the assessment by the city of Pittsburgh of its taxes thereon for that year, B. White conveyed the said real estate to the B. White Company, the bankrupt, subject to a mortgage of $175,000. On November 22, 1911, an involuntary petition in bankruptcy was filed against the B. White Company, a Pennsylvania corporation, which owned and operated a large furniture, carpet and department store on the premises in question. On December 29, 1911, the company was adjudged a bankrupt, and the South Side Trust Company, of Pittsburgh, was appointed receiver and afterwards trustee.

Under various orders of the court, the trustee sold the stock of furniture, carpets, etc., to Rosenbaum Company, and thereafter made a lease of said premises to said company. Early in March, 1912, the trustee filed its first account, as to which there was a hearing on March 15th, and a decree of distribution made on March 18th, whereat a statement of the tax levied by the city of Pittsburgh against the said real estate of the said bankrupt was presented to the referee, who refused to allow the payment of the same out of the proceeds of the bankrupt's personalty. On March 18, 1912, the city filed exceptions to this refusal of the referee. Thereafter, the trustee presented a petition for leave to sell said real estate at public sale, and applied for an injunction against the mortgagee, the Equitable Life Assurance Society of the United States, from proceeding with its mortgage foreclosure. This petition was refused by the court below. The bankrupt company having defaulted in the payment of interest, on the 1st day of December, 1911, the mortgagee instituted proceedings for foreclosure, and, in pursuance thereof, on April 5, 1912, the property was sold at sheriff's sale and purchased by the mortgagee for the sum of $114.63.

On the same day, April 5, 1912, a petition was filed in the name of the city of Pittsburgh for an order upon the trustee to pay the city taxes so assessed against the said real estate of the bankrupt. To this petition the trustee filed an answer and a hearing was held thereon before the referee in bankruptcy. It was objected that the premises were sold at said foreclosure sale to the mortgagee for the sum of $114.63, being the court costs for the foreclosure proceedings, the real value of said property being at least $350,000; that under the law of Pennsylvania, the said sale was made subject to the paramount lien of all the city taxes, and that the petitioner was fully secured for the payment of the same; "that said taxes are not a personal liability of the said bankrupt, and that said petitioner has no remedy under the law of the said state

\* \* \* to collect the said taxes from the said bankrupt, other than from the mortgaged premises."

The referee, after hearing the testimony and upon due consideration, found that the taxes for the year 1912, amounting to $3,078, must be paid by the trustee in priority, and it was so ordered. The trustee excepted to the finding and order of the referee, and the matter was certified to the court below. After argument, the court found that additional testimony or a stipulation as to the facts should be made as to the agreement between the city of Pittsburgh and the mortgagee on the occasion of the sheriff's sale above referred to. In accordance with this suggestion, the testimony of the delinquent tax collector and his chief clerk was taken before a commissioner and the same was filed with the court on a reargument. The court, however, filed an opinion directing that the matter be re-referred to the referee, with power to use the depositions taken or to take new testimony as to the questions involved. Additional testimony having been taken before the referee and the matter reargued, the referee reversed his former decision and disallowed the taxes of $3,078 for 1912, on the ground that they had been paid. To this order, exceptions were filed and a certificate of review taken to the United States District Court, which affirmed the order and report of the referee on his finding that the taxes had been paid, and also held that the taxes involved in the case were not a debt legally due and owing by the bankrupt, but that under the laws of Pennsylvania, taxes upon owners of real estate in the city of Pittsburgh could only be collected by filing a lien on said real estate and proceeding thereon, and in no other manner. From this judgment and order of the court, the appeal before us is taken.

In this last report of the referee, there are the following findings of fact:

Just before the sheriff's sale, at which the mortgagee, the Equitable Life Assurance Society, purchased the mortgaged premises for $114, the amount of the costs, an attorney for the mortgagee called upon the delinquent tax collector and requested him to refrain from bidding at the sheriff's sale of the property an amount that would cover the taxes, as was usual in such cases, stating that there was a legal question that ought to be determined sooner or later, as to the payment of these taxes. After several interviews, the collector agreed to the suggestion, on condition that he was given, on behalf of the mortgagee, a certified check to cover all taxes. This check was given before the sale and no bid was made on behalf of the city thereat. It was upon these findings that the referee, in his former report, concluded that the city was merely indemnified by the mortgagee and that the taxes were not paid or discharged. At the second and final hearing in the referee's office, on examination of the collector by the counsel for the mortgagee, the following questions and answers are referred to:

"Q. Referring to your testimony given November 14, 1912 (deposition), before Miss Beatty, a notary public, I refer to the following: 'Q. And this certified check is simply to indemnify you and the city? A. Yes.'

"Q. Do you remember giving such testimony? A. I believe I did.

"Q. That is correct, Mr. Grenet, isn't it? This check was given to you simply to indemnify you? A. It was given in payment of taxes."

The referee further finds that Mr. Grenet, the collector, was unwilling to admit that the check was simply given to him as a guaranty or indemnity, and that in answer to a question by the referee, he said there was no contract or obligation, either legal or moral, on him to refrain from cashing that check at any moment he saw fit.  He also would not admit that he was prosecuting the petition in this proceeding or was interested in its result.  It further appears that the petition, though in the name of the city of Pittsburgh, was presented and is being prosecuted on behalf of the mortgagee, the Equitable Life Assurance Society.  The referee accordingly finds, as follows:

"It appears to the referee that the probabilities support Mr. Grenet in his statement, that the check was given in payment of the taxes.  When the Equitable Life Assurance Society insisted on foreclosing its mortgage forcing the property to a sale, it placed the city of Pittsburgh in a position to collect and receive the amount of the taxes out of the proceeds of the sale of the property.  It could not get title without paying the taxes.  The form of payment or alleged conditions attached thereto are immaterial to this case, being matters between the city and the mortgagee only, but it seems to the referee, that it is very questionable whether any agreement on Mr. Grenet's part to postpone the collection of the taxes would be valid.  In the first place, it would not bind the city of Pittsburgh, and in the second place it would seem not to be binding upon Mr. Grenet himself because of an entire want of consideration to him.

"Under all the testimony in the case, the referee is of opinion, that when the certified check was delivered to Mr. Grenet it was in law and in fact a payment of the taxes, and therefore the taxes having been paid, the city of Pittsburgh's petition in this case should be dismissed.  This is a conclusion different from that which the referee reached at the time of the former report.  At that time it appeared simply from the petition and answer, that the check was merely to indemnify Grenet, and that the city had not in its possession the money for the taxes.  An examination of the testimony and evidence since produced before the referee leads to a different conclusion."

Upon the exception to this report, a certificate was made by the referee to the court below, and a petition for revision of the same presented to said court by the appellant.  After reviewing the report and findings of the referee, the court says:

"The referee was clearly right in his conclusion last arrived at, and this court would be content to rest its affirmance of the referee's decision wholly upon the referee's opinion, were it not deemed important to give some expression as to the right of the city of Pittsburgh to receive the taxes assessed against land out of the general estate of the bankrupt."

After a careful examination of the testimony and findings of the referee, as set out in the record, we are of opinion that the taxes of the city of Pittsburgh assessed against the bankrupt on the real estate in question, were paid at the time and in the manner stated, by the referee.  As these taxes constituted a paramount lien on the property, the mortgagee has, as purchaser, received the benefit of such payment by the discharge of that lien.

The order and judgment of the court below is therefore affirmed upon this ground alone, to wit, that the taxes claimed have already been paid, in discharge of their lien against the property purchased by the mortgagee at the sheriff's sale.  We refrain from any expression of opinion as to the right of the city of Pittsburgh to recover the taxes assessed against land, out of the general estate of the bankrupt.